ABNER H. BOWMAN *vs.* GEORGE B. BLODGETT & anotner, & Trustees.

Where, after a partnership is dissolved, a suit for a partnership debt is brought against the former partners, and one of them is held to bail, and judgment is recovered against both, and the bail are compelled to pay the amount of such judgment, they cannot recover of the other partner any part of the sum thus paid by them.

HIRAM JOHNSON & JAMES HOOTON were summoned as trustees of the principal defendants, Blodgett & Burns, and the only question raised in the case was, whether said Hooton was chargeable. From his answer, and the facts set forth in the answer of said Johnson, which the parties agreed should be taken in connexion with the answer of Hooton, it appeared that on the 1st of April, 1837, said Johnson & Hooton, then residing in New York, became partners in trade, and that the partnership was dissolved in the month of June following, when Hooton removed into this Commonwealth : That while the partnership existed, said partners became indebted to Ormond & Rose for the rent of a store, and that, after Hooton removed from New York, Ormond & Rose commenced an action against him and Johnson and caused Johnson to be arrested, and that said Blodgett & Burns, the principal defendants in this action, became his bail : That no service was made on said Hooton, but that the action proceeded as against both, and judgment was rendered against both, in August, 1838 : That subsequently, upon the avoidance of Johnson, a *scire facias* was issued against said Blodgett & Burns, his bail, and a judgment thereon was rendered against them, in October, 1838, for the amount recovered by Ormond & Rose against said Johnson & Hooton, which judgment they paid and satisfied.

It further appeared that said Johnson & Hooton had made no

adjustment of their partnership concerns, and that they disagreed as to the fact whether, on adjusting those concerns, a balance would be due to Hooton.

*Betton,* for the plaintiff.

*A. H. Fiske,* for Hooton.

DEWEY, J.    The question of the liability of Hooton to be charged as trustee depends upon the answer to be given to the inquiry whether, upon the facts disclosed, Blodgett & Burns could have maintained an action against Hooton to recover the money paid by them on the judgment against them as bail of Johnson.    The plaintiff insists that the money thus paid by Blodgett & Burns was paid for the benefit of Hooton as well as Johnson.    If it be conceded that there was an incidental benefit to Hooton by the payment made by Blodgett & Burns, yet this is not sufficient to authorize the party, thus paying money, to maintain an action against him who is thus benefited by the payment.    No man can create a cause of action against another by the mere voluntary payment of his debts.    It must be done upon request, either express or to be implied from all the circumstances of the case.    The payment may be properly made when required in consequence of an obligation assumed by the party paying money at the instance of him for whose benefit it is paid ; and in some cases, when paid compulsorily and necessarily in the protection of his own interests, to remove incumbrances or liens.    1 Leigh's Nisi Prius, 70, 71.    The mere fact, that Blodgett & Burns have paid a debt for which Hooton was liable, is not therefore alone sufficient to charge Hooton in this action.

It is unnecessary to consider what would have been the effect of a payment made under circumstances similar to those disclosed in the present case, if they had taken place during the continuance of the partnership.    The case presents itself subject to the further objection, that the obligation assumed by Blodgett & Burns, which alone created their liability to pay the money now demanded of Hooton, was assumed after the dissolution of the partnership, and at the sole request of Johnson.    But such dissolution puts an end to the authority of one partner to bind

Bowman *v.* Blodgett & another & Trustees.

the other members of the late firm, and operates as a revocation of all power to create new contracts. Hence, after a dissolution, the party withdrawing cannot be bound by any new contract entered into by his former partner. He is incompetent to bind the former partner by giving a new promissory note in the partnership name for a partnership debt, even in renewal of a former note. *Bank of South Carolina* v. *Humphreys*, 1 McCord, 388.

These general principles are very familiar and I suppose will not be questioned. The plaintiff however contends, that this payment by Blodgett & Burns was compulsory, and therefore not liable to the objections that might be taken to a voluntary payment, or advancement of money at the request of one of the late partners, and that it falls within the principle of the case of *Exall* v. *Partridge*, 8 T. R. 308; a case which carries the doctrine of implied assumpsit, arising from the payment of money for another, without his request, to a great extent. In that case, the goods of the plaintiff being on the premises of a third person held by a lessee, were distrained by the landlord for rent in arrear, and the plaintiff was obliged to pay the amount of rent so due in order to redeem the said goods; and it was held that the plaintiff in that case might maintain assumpsit, for the money thus paid, against the original lessees who were bound by their covenants to pay the same to their landlord; although some of the lessees had, to the knowledge of the plaintiff, before he placed his goods on the premises, assigned their interest to one of their co-lessees, who was in the exclusive possession of the premises at the time the goods were distrained.

It seems to us, that in the case cited the payment was not a voluntary one, in the sense in which the present one was. It did not arise from an obligation assumed at the request of one of the co-lessees. It does not appear that the party paying the money knew that there was rent in arrear, or that any liability to pay money would attach by placing his goods on the premises of the lessee. It was strictly compulsory upon him, and necessary to procure the possession of his goods which had been distrained. 1 M. & S. 499, 500. But in the case at bar, the liability

arose upon a voluntary undertaking by Blodgett & Burns in behalf of one of two copartners, and not an obligation originally for the payment of money, but from the execution of a bail bond, in which Johnson was sole principal, and they became his sureties. It was a personal undertaking on the part of Johnson for his appearance in the suit in which he was arrested, and of no validity against Hooton; and it is as such to be considered on the part of the sureties to the bail bond, when looking to their principal for indemnity.

A case having a strong bearing upon the question of raising an implied assumpsit, as against all the copartners, in favor of a surety who had executed a bond with one of several copartners, and had subsequently, as such surety, paid the money due thereon, may be found in 2 Johns. 213, *Tom* v. *Goodrich*. In that case, one of five partners in a commercial house executed a bond to the United States for the amount of duties on merchandise belonging to the firm, and Tom, the plaintiff, executed the bond as surety. The principal in the bond having deceased, the surety paid the amount of the same, and brought his action on the implied assumpsit against the other copartners; but it was held that he could not maintain his action; that inasmuch as one partner could not bind his copartner by his sole deed, so he could not, by signing a sole bond with a surety to that bond, create a liability or cause of action against the other partner, in favor of the surety. That case, it is obvious, goes far beyond the principle necessary to settle the present one; as the bond, in the case cited, was executed during the existence of the partnership. The objection stated by Kent, C. J. to the maintaining of that action, applies equally to the present. To the apparently strong argument that the implied assumpsit, as against all the partners, would arise from the payment of money for their common benefit, the answer was, "We cannot, in this action, unravel the accounts between A.," who signed the bond and obtained B. as his surety, "and his partners; and to push the implied assumpsit beyond the party to the bond may lead to great difficulties and produce injustice." Whatever may be thought of the force of this reasoning applied to the

facts in the case of *Tom* v. *Goodrich*, or the correctness of the decision in that case, they certainly have a strong bearing in a case where the question is, whether an implied assumpsit can be raised against the members of a late partnership, in favor of a surety who has executed a bond at the instance of one of the partners, after the dissolution of the partnership.

A case more analogous is found in 4 Dev. & Bat. (N. Carolina) Rep. 423, *Osborn* v. *Cunningham*, where it was held that if two joint obligors be sued, and one of them give bail, such bail cannot, upon being compelled to, pay the debt, maintain an action against the other obligor for money paid; there being no privity between the bail of one obligor and his co-obligor. See also 4 Dev. & Bat. 425, *Carter v. Black*.

Upon legal principles, how does the present case differ from that which would have arisen if Johnson, upon being pressed for money and threatened with an arrest, had borrowed the money of Blodgett & Burns to pay the debt to Ormond & Rose ? Or, to take a case a little stronger, suppose Johnson had been actually arrested on mesne process, and, to avoid going to prison or giving bail, he had applied to Blodgett & Burns, stating the situation in which he was placed, and they had advanced the money and thus relieved him, and discharged the debt due from Johnson & Hooton. In the cases supposed, I apprehend it would be readily conceded that there could be no legal claim on Hooton for the money advanced. How does it differ the case, that instead of advancing the money at the early period of the suit I have supposed, Blodgett & Burns became bail for the personal appearance of Johnson, and by reason of their neglect to surrender him and thus discharge themselves of their liability, they permitted a *non est inventus* to be returned, and thereupon were compelled to pay the amount of the judgment ?

It seems to us that the facts of the present case cannot raise an implied assumpsit on the part of Hooton to repay to Blodgett & Burns the money they have advanced in consequence of becoming bail for Johnson. We cannot know the equities of the case between the late copartners, Johnson & Hooton. But if it were conceded that as between them, Hooton ought to

pay a part or the whole of the debt to Ormond & Rose, the legal difficulty would still present itself, that Johnson, after the dissolution of the partnership, could not create, by his sole act, or impose on Hooton a new liability to a third person. The result is, therefore, that Hooton cannot be held as trustee